IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| BETTY LEAVERN FRIDAY,<br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br>    Defendant. | )<br>)<br>)<br>)   Civil No. 3:15cv450 (JAG)<br>)<br>)<br>)<br>)<br>) |

## REPORT AND RECOMMENDATION

On October 12, 2011, Betty Leavern Friday ("Plaintiff") applied for Social Security Disability Benefits ("DIB") and, on October 14, 2011, for Supplemental Security Income ("SSI") under the Social Security Act ("Act"), alleging disability from colon obstruction, intestine removal, spleen and back pain, with an alleged onset date of June 10, 2011. The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration. Thereafter, an Administrative Law Judge ("ALJ") denied Plaintiff's claims in a written decision and the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.

Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g), arguing that the ALJ failed to properly assess Plaintiff's credibility and residual functional capacity ("RFC"). (Mem. in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Mem.")(ECF No. 10) at 45-49.) This matter now comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the parties' cross-motions for summary judgment, rendering the

matter now ripe for review.[1] For the reasons that follow, the Court recommends that Plaintiff's Motions for Summary Judgment (ECF No. 10) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 13) be GRANTED and that the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

On October 12, 2011, Plaintiff filed an application for DIB and, then, on October 14, 2011, filed an application for SSI, with an alleged onset date of June 10, 2011. (R. at 67, 74.) The SSA denied these claims initially on November 18, 2011, and upon reconsideration on January 5, 2012. (R. at 73, 80, 90, 98.) At Plaintiff's written request, the ALJ held a hearing on February 20, 2014. (R. at 37.) On February 25, 2014, the ALJ issued a written opinion, denying Plaintiff's claims and concluding that Plaintiff did not qualify as disabled under the Act, because Plaintiff could perform past relevant work as a sewing machine operator and as an order picker. (R. at 21.) On June 10, 2015, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner subject to review by this Court. (R. at 1.)

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court "will affirm the Social Security Administration's disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d

---

[1] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance, and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). In considering the decision of the Commissioner based on the record as a whole, the court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 477. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

The Social Security Administration regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 416.920(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, during step one, the ALJ looks at the claimant's current work activity. 20 C.F.R. § 416.920(a)(4)(i). During step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. 20 C.F.R. § 416.920(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. 20 C.F.R. § 416.920(a)(4)(iii). Between steps three and four, the ALJ must assess

3

the claimant's residual functional capacity ("RFC"), accounting for the most that the claimant can do despite her physical and mental limitations. 20 C.F.R. § 416.945(a). During step four, the ALJ assesses whether the claimant can perform her past work given her RFC. 20 C.F.R. § 416.920(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. 20 C.F.R. § 416.920(a)(4)(v).

### III. THE ALJ'S DECISION

On February 20, 2014, the ALJ held a hearing during which Plaintiff (represented by counsel) and a vocational expert testified. (R. at 37-66.) On February 25, 2014, the ALJ issued a written opinion, finding that Plaintiff did not qualify as disabled under the Act. (R. at 22.)

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 19-22.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 10, 2011, the alleged onset date. (R. at 19.) Although Plaintiff worked after the alleged disability onset date, her work activity did not rise to the level of substantial gainful activity. (R. at 19.) At step two, the ALJ found that Plaintiff suffered from the severe impairment of abdominal pain as a residual effect of stomach surgery. (R. at 19.) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (R. at 20.)

In assessing Plaintiff's RFC, the ALJ found that Plaintiff could sit, stand and walk without limitation during an eight-hour workday. (R. at 20.) Additionally, the ALJ found that Plaintiff could occasionally lift or carry objects weighing twenty pounds and could frequently lift or carry objects weighting ten pounds. (R. at 20.) Finally, the ALJ found that Plaintiff could

occasionally climb ramps and stairs, balance and stoop. (R. at 20.) Plaintiff had no limitations in her ability to kneel, crouch and crawl. (R. at 20.)

At step four, the ALJ found that Plaintiff could perform past relevant work as a sewing machine operator and as an order picker, because these jobs do not require the performance of activities precluded by Plaintiff's RFC. (R. at 21.) Therefore, Plaintiff did not qualify as disabled under the Act. (R. at 22.) Because the ALJ found that Plaintiff could perform past relevant work, he did not proceed to step five.

## IV.  ANALYSIS

Plaintiff, sixty-three years old at the time of this Report and Recommendation, previously worked as a cafeteria counter worker, a kitchen helper, a sewing machine operator and an order filler. (R. at 22.) She applied for DIB and SSI, alleging disability from colon obstruction, intestine removal and spleen and back pain, with an alleged onset date of June 10, 2011. (R. at 67, 74.) Plaintiff argues that the ALJ erred in failing to follow prescribed procedures in determining Plaintiff's credibility and RFC. (Pl.'s Mem. at 8-13.) For the reasons set forth below, the ALJ did not err in his decision.

### A. The ALJ properly assessed Plaintiff's credibility as required by the SSA regulations and *Mascio v. Colvin*.

Plaintiff argues that the ALJ's credibility assessment was inconsistent with the SSA's policy and Fourth Circuit case law. (Pl.'s Mem. at 11.) Specifically, Plaintiff contends that the ALJ inappropriately used boilerplate language in his decision as prohibited by *Masico v. Colvin*. 788 F.3d 626, 639 (4th Cir. 2015). (Pl.'s Mem. at 8-9.) Further, Plaintiff contends that the ALJ failed to consider each of the factors described in 20 C.F.R. 404.1529(c) and 416.929(c), thereby failing to "make every reasonable effort to obtain available information that could shed light on the credibility of [Plaintiff's] statements," as required in SSR-96-7p. (Pl.'s Mem. at 9-11.)

5

Defendant responds that the ALJ properly followed the two-step analysis articulated in *Craig v. Chater,* 76 F.3d 585, 592-92 (4th Cir. 1996), to assess Plaintiff's credibility. (Def.'s Mot. for Summ. J. & Br. in Supp. Thereof)("Def.'s Br.")(ECF No. 13) at 10.) Defendant further asserts that the ALJ explained his credibility, citing ample evidence from the medical record and Plaintiff's own account of her daily activities. (Def.'s Br. at 10-12.) Finally, Defendant argues that the ALJ's use of boilerplate language does not render the decision invalid, because the ALJ paired the language with a proper explanation and supporting evidence. (Def.'s Br. at 12-13.)

Here, in formulating his credibility assessment, the ALJ relied on the medical record and Plaintiff's own descriptions of her daily activities. (R. at 21.) The ALJ first found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged pain. (R. at 21.) However, the ALJ did not find Plaintiff's statements concerning the intensity, persistence and limiting effects of her pain entirely credible, because evidence from the medical record, along with Plaintiff's own account of her daily activities, were "inconsistent with her allegations of disability." (R. at 21.)

### 1. The ALJ's use of boilerplate language in his credibility assessment does not require remand.

Plaintiff challenges the use of the following boilerplate language in the ALJ's decision:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

(Pl.'s Mem. at 8)(quoting R. at 21.) Plaintiff relies on the Fourth Circuit's opinion in *Masico v. Colvin* to argue that the use of this boilerplate language in the ALJ's decision is "inappropriate" and constitutes error requiring remand. (Pl.'s Mem. at 8-9, 13)(citing 780 F.3d at 639.) The Court finds that the ALJ's use of boilerplate language does not require remand.

Plaintiff improperly relies on *Masico* to argue that the ALJ may not use any boilerplate language. (Pl.'s Mem. at 8-9.) First, the language that the ALJ used here is not contrary to the SSA's regulations. In *Mascio*, the ALJ stated that the claimant's statements "concerning the intensity, persistence and limiting effects of [the claimant's] symptoms are not credible to the extent they are inconsistent with [the claimant's] residual functional capacity assessment." 780 F.3d at 639 (internal citations omitted). The Fourth Circuit found the ALJ's language to be problematic, because, in violation of the SSA policies, it indicated that the ALJ: (1) compared the claimant's alleged functional limitations from pain to his RFC when the ALJ should have compared them to the other evidence in the record; and (2) treated the claimant's statements regarding pain and her RFC as separate assessments when pain should be a part of the RFC analysis. *Id.* But here, the ALJ opined that Plaintiff's statements are "are not entirely credible for the reasons explained in [his] decision." (R. at 21.) This language lacks the concerns discussed in *Mascio*, because the ALJ here did not compare Plaintiff's statements regarding pain to her RFC. And, as will be discussed in detail below, the ALJ provided an adequate narrative summary of the record, addressed conflicting pieces of evidence and explained the weight that he afforded to the evidence. (R. at 20-21.) Thus, unlike in *Mascio*, the ALJ properly relied on other evidence from the record to assess Plaintiff's credibility. Therefore, Plaintiff's argument grounded in *Mascio* lacks merit.

**2. The ALJ properly assessed Plaintiff's credibility.**

Plaintiff contends that the ALJ failed to consider all of the relevant evidence described in 20 C.F.R. 404.1529(c) and 416.929(c) in determining Plaintiff's credibility and failed to provide specific reasons for the weight given to Plaintiff's statements. (Pl.'s Mem. at 9-10.) Plaintiff argues that the ALJ improperly diminished the weight that he gave to Plaintiff's credibility,

7

because the ALJ did not inquire into the effort that Plaintiff expends during her daily activities. (Pl.'s Resp. to Def.'s Mot. for Summ. J. & Br. in Supp. Thereof ("Pl.'s Resp.") (EFC No. 14) at 3.) Defendant responds that the ALJ properly assessed Plaintiff's credibility in the context of all the evidence before the ALJ and that substantial evidence supports the ALJ's determination. (Def.'s Br. at 13.)

When determining the claimant's RFC, the ALJ must incorporate impairments supported by both the objective medical evidence in the record and those based on the claimant's credible complaints of subjective symptoms, such as disabling pain. 20 C.F.R. §§ 404.1545(a)(3), 404.1545(e). The ALJ must follow a two-step process to determine whether a person is disabled by pain or other subjective symptoms. *Craig*, 76 F.3d at 594; 20 C.F.R. § 404.1529(a). First, the ALJ must assess whether the claimant has a medically determinable impairment which could reasonably be expected to produce the claimant's alleged pain or other symptoms. *Craig*, 76 F.3d at 594; SSR-96-8p.

If the ALJ answers the first threshold question in the affirmative, the ALJ next evaluates the claimant's statements about the intensity, persistence and limiting effects of the symptoms and the extent to which the symptoms limit the claimant's ability to work. *Craig*, 76 F.3d at 594. In this second step, if the claimant's statements about the intensity, persistence or functionally limiting effects of pain are not substantiated by the objective medical evidence, the ALJ must make a finding on the credibility of the claimant's statements based on consideration of the entire case record. 20 C.F.R. 404.1529(c)(3); 20 C.F.R. 416.929(c)(3); SSR-96-7p. The court must give great deference to the ALJ's credibility determinations. *Eldeco, Inc. v. N.L.R.B.*, 132 F.3d 1007, 1011 (4th Cir. 1997). Absent exceptional circumstances, the reviewing court should accept credibility determinations that form the basis of the ALJ's factual findings. *Id.*

8

n/a
Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all." *Id.* (citations omitted).

Here, the ALJ properly followed the two-step process. First, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged pain. (R. at 21.) In the second step, the ALJ found that the medical signs and laboratory findings, as well as Plaintiff's medical treatment history, did not support the allegations that Plaintiff's pain prevented her from performing work full-time, because her exams were essentially normal and her course of treatment had been routine and conservative. (R. at 21.) The ALJ then turned to subjective evidence, which consisted of Plaintiff's testimony, and found that Plaintiff's self-reported daily activities, which included working twenty hours per week, performing house work, preparing meals and playing with her grandchildren, diminished her credibility regarding the severity of her pain. (R. at 21.) This Court finds that the ALJ properly followed the two-step process in making his credibility assessment and that substantial evidence supports the assessment.

The ALJ acknowledged Plaintiff's statements that she could not work more than four hours per day due to pain in her stomach caused by lifting, that she had gas in her stomach and that she required three bathroom breaks in the four hours that she works. (R. at 21.) He further acknowledged that she asked for help with lifting clothing while doing the laundry. (R. at 21.) The ALJ found, however, that the level of functioning that she reported was inconsistent with her allegations of disabling pain, because she still performed some household work, prepared meals, played with her grandchildren and worked twenty hours per week. (R. 21.)

9

The medical record supports the ALJ's credibility assessment. Plaintiff's medical records overall show routine and conservative treatment. After her surgery for diverticulitis and colonic obstruction in September 2011, follow-up CT scans showed "unremarkable" results. (R. at 21.) The notes from her follow-up visits with Dr. Leon Brown in 2012 do not indicate any complaints about abdominal pain. (R. at 535-42, 558-66). Plaintiff reported abdominal pain during her April 2013 appointment, but the prescribed treatment was conservative. (R. at 563-64). A few months later in August 2013, notes from Plaintiff's appointment with Dr. Daphne Bryan do not discuss abdominal pain and indicate that her gastrointestinal was "Soft, Non-tender." (R. at 601.) The follow-up visit with Dr. Bryan in November 2013 again did not address abdominal pain or diverticulitis. (R. at 648.)

The ALJ gave some weight to the credibility of Plaintiff's statements and took the allegations of pain into account in his assignment of the RFC, finding that she could perform only a limited range of light work. (R. at 20.) This Court finds that the ALJ properly assessed Plaintiff's credibility and substantial evidence supports the credibility assessment.

**B. The ALJ properly assessed Plaintiff's RFC.**

Plaintiff argues that the ALJ's decision lacks the narrative analysis required for a meaningful review of the ALJ's conclusions regarding Plaintiff's ability to do sustained work-related activities on a regular and continuing basis. (Pl.'s Mem. at 12). Specifically, Plaintiff contends that the ALJ failed to resolve inconsistencies in the evidence, such as Plaintiff's testimony that she needed to rest after working for four hours. (Pl.'s Mem. at 12). Defendant responds that the ALJ's RFC assessment was consistent with the SSA regulations and prior case law, because the ALJ considered the relevant medical evidence, as well as Plaintiff's reported daily activities in reaching his conclusion. (Def.'s Br. at 10.) Further, Defendant contends that

the ALJ properly expressed Plaintiff's limitations in terms of work-related functions. (Def.'s Br. at 10.) The Court finds that the ALJ performed the proper analysis in determining Plaintiff's RFC and that substantial evidence supports the ALJ's RFC findings.

**1. The ALJ followed the proper procedure to determine Plaintiff's RFC.**

Here, the ALJ found that Plaintiff had the RFC to sit, stand and walk without limitation during an eight-hour workday. (R. at 20.) She could lift and/or carry twenty pounds occasionally and ten pounds frequently. (R. at 20.) She could not climb ladders, ropes or scaffolds. (R. at 20.) She could occasionally climb ramps and stairs, balance, stoop and had no limitations in her ability to kneel, crouch and crawl. (R. at 20.)

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 416.902(e)-(f), 416.945(a)(1). This assessment must consider all medically determinable impairments, including non-severe medically determinable impairments. *See* 20 C.F.R. § 404.1545(a)(2); *Masico*, 780 F.3d at 635. In analyzing a claimant's abilities, the ALJ must first identify the nature and extent of the claimant's functional limitations and restrictions and assess the remaining capacity for work-related activities on a regular and continuing basis, that is, for eight hours a day, five days a week. 20 C.F.R. § 416.945(b). The ALJ must provide a narrative discussion describing how the evidence supports each conclusion. *Masico*, 780 F.3d at 636 (citing SSR 96-8p). In making this assessment, however, the ALJ does not need to provide a function by function analysis, but must "assess a claimant's capacity to perform *relevant functions*" to allow for meaningful review of the ALJ's conclusions when the record contains contradictory evidence about a claimant's capability to perform a particular function. *Masico*, 780 F.3d at 636-37 (emphasis added). The RFC assessment must be based on all available

11

evidence in the record, such as objective medical evidence, medical signs and laboratory findings, the effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms reasonably attributed to a medically determinable impairment and evidence from attempts to work, need for a structured living environment, and work evaluations, if available. SSR 96-8p.

Here, the ALJ met the requirements of SSR 96-8p by providing a narrative analysis of the available evidence. The ALJ discussed all relevant evidence from the medical record, Plaintiff's reports of her daily activities and Plaintiff's testimony regarding the effects of her disabling symptoms. (R. at 20-21.) The ALJ acknowledged Plaintiff's testimony that she could not work more than four hours per day due to pain in her stomach when lifting. (R. at 20.) He acknowledged her other limiting symptoms, including gas in her stomach, the need for frequent bathroom breaks and that the pain distracted Plaintiff and limited how fast she could work. (R. at 21.) In going through this narrative of the alleged symptoms, the ALJ did not ignore any reported symptoms or limiting language from Plaintiff's testimony. But the ALJ stated that he did not find Plaintiff's allegations entirely credible, because they were inconsistent with both the objective medical record and the level of functioning in her own account of her daily activities. (R. at 21.) The ALJ pointed out that Plaintiff could perform household work, prepare meals, play with her grandchildren and work twenty hours per week. (R. at 21.) The ALJ acknowledged Plaintiff's stated symptoms and limitations "to the extent that they [were] found credible" by limiting her to work that required carrying twenty pounds occasionally and ten pounds frequently, no more than occasional climbing ramps and stairs, balancing or stooping, and no climbing of ladders, ropes, or scaffolds. (R. at 20-21.) The ALJ found that the record did not demonstrate that Plaintiff was limited in her ability to sit, walk or stand. (R. at 21.)

Next, the ALJ provided a narrative of the evidence from Plaintiff's medical record, including her diagnosis of diverticulitis, ventral, hernia and colonic obstruction in August 2011, and her subsequent exploratory laparotomy, sigmoidectomy and small bowel resection and repair of ventral hernia on September 6, 2011. (R. at 21.) The ALJ noted that Plaintiff reported residual stomach pain during a follow-up appointment in December 2011, but that subsequent CT scans showed unremarkable results, and she did not report stomach pain during her August 2013 appointment with Dr. Daphne Bryan. (R. at 21, 598.) The ALJ then addressed the reports from the state agency consultants that limited Plaintiff to less than a full range of light work, but found that Plaintiff's medical records and own reported daily activities did not support a limitation on Plaintiff's ability to sit, stand or walk. (R. at 21.) The record supported a limitation on Plaintiff's ability to lift and carry, and the ALJ included this in his RFC determination by limiting Plaintiff to lifting or carrying twenty pounds occasionally and ten pounds frequently. (R. at 20.)

### 2. Substantial evidence in the record supports the ALJ's RFC findings.

Plaintiff argues that the overwhelming evidence in the record compels the finding that Plaintiff did not retain the capacity to work for eight hours a day on a sustained basis. (Pl.'s Mem. at 12.) Defendant responds that the record as a whole supports the ALJ's RFC findings. (Def.'s Br. at 9.)

This Court must uphold the ALJ's factual findings "if they are supported by substantial evidence and were reached through application of the correct legal standard." *Craig*, 76 F.3d at 589 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted). "[T]he substantial evidence standard 'presupposes ... a zone of choice within which the decisionmakers can go

either way, without interference by the courts." *Dunn v. Colvin*, 607 F. App'x 264, 266 (4th Cir. 2015) (citations omitted). The Court will not reverse the ALJ's RFC findings "merely because substantial evidence would have supported an opposite decision." *Id.* The Court finds that substantial evidence in the record supports the ALJ's assessment, despite Plaintiff's conflicting statements regarding her symptoms.

Plaintiff's own statements support the ALJ's RFC assessment. Plaintiff reported lying down and resting, preparing meals, playing with her grandkids, cleaning and doing laundry with help from her granddaughter to lift clothes. (R. at 51-54.) She did not report needing any help to get ready for work in the morning. (R. at 51-52.) When asked about her hobbies, Plaintiff stated that she sewed, "anything and everything." (R. at 56.) Plaintiff reported taking medication for high blood pressure and nerves, but cited no medication for pain. (R. 55.) During the hearing in front of the ALJ, Plaintiff explained that she had pain in the bottom of her stomach when she lifted the crates of juice at her job at the Richmond Public Schools, which she worked every day. (R. at 49.) Plaintiff testified that the crate weighed more than ten pounds and based, on Plaintiff's description that the crate contained about fifty individual juice cartons with about one cup in each, the ALJ roughly estimated that the crate may have weighed twenty pounds or more. (R. at 49.) This supports the ALJ's RFC determination limiting Plaintiff's lifting and carrying to twenty pounds occasionally and ten pounds frequently. (R. at 20.)

Plaintiff's treatment records further support the ALJ's RFC determination. The record shows that Plaintiff went to the emergency room on August 31, 2011, for abdominal pain and was diagnosed with diverticulitis and colonic obstruction. (R. at 335, 359). Plaintiff underwent surgery on September 6, 2011, for these conditions. (R. at 421). Shortly after surgery, Plaintiff was referred to a hematology-oncology clinic due to elevated platelets. (R. at 555-56.) Notes

from her initial visit in October 2011 with specialists stated that she was recovering normally from surgery, denied significant abdominal pain and that her platelet count had returned to a normal range. (R. at 444-46.)

Plaintiff had a number of appointments with Dr. Leon Brown between 2011 and 2013. She reported pain during her follow-up appointment with Dr. Brown a few months after surgery in December 2011. (R. at 448.) In January 2012, a CT scan of Plaintiff's abdomen and pelvis showed "unremarkable" results and no bowel obstruction. (R. at 553-54.) Records from Plaintiff's subsequent appointments with Dr. Brown in January, July and December of 2012 lack any mention of complaints about abdominal pain from Plaintiff. (R. at 538-41, 561-62.) Plaintiff did, however, report pain during a follow-up appointment with Dr. Brown in April 2013. (R. at 563-64.)

In August 2013, Plaintiff met with Dr. Daphne Bryan to establish care. (R. at 598.) Notes from this initial appointment do not report abdominal pain and show that her gastrointestinal was "Soft, Non-tender." (R. at 601.) During her next visit with Dr. Bryan in November 2013, Plaintiff reported back pain lasting more than six months, but that the pain level was acceptable. (R. at 647-48.) The diagnostic plan from this visit did not address abdominal pain or diverticulitis. (R. at 648.)

Consequently, in determining Plaintiff's RFC, the ALJ addressed the evidence available in the record, namely Plaintiff's testimony and the medical records. He followed the proper procedure to weigh Plaintiff's credibility and, finding her only partially credible, limited Plaintiff's RFC in the weight that Plaintiff could lift or carry. The Court finds that the ALJ followed the proper procedure in determining Plaintiff's RFC and that substantial evidence supports the ALJ's RFC findings.

## V. CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's Motions for Summary Judgment (ECF No. 10) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 13) be GRANTED and that the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to United States District Judge John A. Gibney, Jr. and to all counsel of record.

### NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/
David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date: June 7, 2016